No. 96,011

JOSE MORA SOTO, *Appellant*, v. CITY OF BONNER SPRINGS, *et al., Appellees*.

(238 P.3d 278)

Opinion filed September 3, 2010.

*William Sharma-Crawford*, of Sharma-Crawford Attorneys at Law, of Overland Park, argued the cause and was on the briefs for appellant.

*Patrick M. Waters*, of legal department, Unified Government of Wyandotte County/Kansas City, of Kansas City, argued the cause, and *Henry E. Couchman, Jr.*, of the same office, was with him on the briefs for appellees.

The opinion of the court was delivered by

NUSS, J.: This case considers the application of the Kansas Tort Claims Act (KTCA), K.S.A. 75-6101 *et seq.*, to a law enforcement detention. Jose Mora Soto was lawfully stopped for a traffic violation in Bonner Springs in Wyandotte County. He was then arrested and detained at a Wyandotte County detention facility pursuant to a Johnson County arrest warrant issued for a similarly named individual. Upon Soto's release 2½ days later, he brought suit for false arrest and imprisonment against the City of Bonner Springs, Unified Government of Wyandotte County/Kansas City, the Wyandotte County Sheriff's Department, and various officers. The district court granted summary judgment in favor of all defendants on various bases.

Soto appealed only the summary judgments granted to the Unified Government of Wyandotte County/Kansas City, and the Wyandotte County Sheriff's Department (collectively County). The Court of Appeals affirmed the summary judgment, holding that the Wyandotte County detention officers were engaged in a discretionary function in deciding whether to further investigate if Soto was the person named in the arrest warrant. Accordingly, the discretionary function exception of the KTCA provided the County with immunity from liability for false arrest and imprisonment. *Soto v. City of Bonner Springs*, 38 Kan. App. 2d 382, 385, 166 P.3d 1056 (2007). We granted Soto's petition for review under K.S.A. 60-2101(b).

As we understand Soto's brief to this court and his accompanying oral arguments, he essentially raises only one argument on appeal. The rest of his issues are therefore abandoned. See *State v. Richmond*, 289 Kan. 419, 437, 212 P.3d 165 (2009) (An issue not briefed by an appellant is deemed waived or abandoned.). His basic appellate issue is whether the County is immune from liability under the discretionary function exception of the KTCA.

We answer: "Yes." Accordingly, we affirm the district court and the Court of Appeals.

## FACTS

In November 2003, Soto was stopped by Bonner Springs Police Officer Mark Stites, who noticed that Soto's license plate was loose and hanging. Officer Stites was told by a police dispatcher that the license plate on the car Soto was driving belonged to a car of a different make and model. In Soto's deposition, he testified that the license plate on the car he was going to drive had expired, so he put on a license plate from another.

Soto provided Officer Stites a driver's license for Jose M. (Mora) Soto. Consequently, Stites requested information from the dispatcher about Jose M. Soto, a Hispanic male with a date of birth of December 26, 1973, a height of 5'5", and a weight of 165 lbs. The dispatcher advised Stites of a Johnson County warrant for a Jose L. (Luis) Soto, a Hispanic male with a date of birth of December 24, 1973, a height of 5'3", and a weight of 115 lbs. Ac-

cording to Stites' affidavit, the driver's license given to him by plaintiff Soto contained the same number as the driver's license on the warrant provided by the dispatcher, and he confirmed this match with the dispatcher. These facts are uncontroverted in Soto's response to the County's summary judgment motion. At oral arguments, Soto's attorney conceded that his client's driver's license number was corroborated, *i.e.*, it also appeared in the warrant.

Officer Stites asked the dispatcher if the Soto warrant was still valid, and the dispatcher told him it "had been confirmed." Stites arrested Soto and transported him to the Wyandotte County Detention Center with the understanding that someone from the Johnson County Sheriff's Department would pick him up. Soto testified in his deposition that he protested his arrest and attempted to inform Stites that he was not the person named in the warrant. According to Soto's brief, he also "attempted to tell the jail personnel that he was not the person named in the warrant."

Deputy David Ornelas was the intake booking officer at the Wyandotte County Detention Center. According to Ornelas' affidavit, he called the Johnson County Sheriff's Department's warrants desk. His purpose was to confirm the existence of the warrant and to make certain that Johnson County still wanted Wyandotte County to detain Soto. Ornelas provided the Johnson County deputy "the information on [Stites'] arrest report," including Soto's first and last names, middle initial, date of birth, and the number of the warrant on which Soto had been arrested. The Johnson County deputy confirmed that "a warrant existed for Mr. Soto's arrest" and requested that Wyandotte County continue to detain Soto. Ornelas then proceeded to book Soto on the Johnson County warrant. Soto did not controvert any of these facts in his response to the County's motion for summary judgment.

After approximately 2½ days in custody, Soto was picked up by authorities from Johnson County. Not long after he arrived at their facility, Soto pointed out that he did not look like the person pictured on the warrant. He was then released.

Soto filed a petition claiming negligence against various officers, the City of Bonner Springs, Unified Government of Wyandotte County/Kansas City, and the Wyandotte County Sheriff's Depart-

ment. Soto later conceded that all of his negligence claims were, in fact, claims for false arrest and imprisonment.

The City of Bonner Springs and its officers filed a motion for summary judgment arguing that Soto's claim for false arrest was filed outside of the 1-year statute of limitations. They also claimed immunity from liability under certain portions of the KTCA—most importantly, the discretionary function exception.

In the County's motion for summary judgment, it argued the officers were legally justified in detaining Soto because there was probable cause to believe a valid warrant existed for his arrest. The County claimed that the officers had no duty to investigate whether Soto was the person named in the Johnson County warrant. Finally, the County argued that the discretionary function and police protection exceptions in the KTCA provided immunity from any liability.

After hearing arguments, the district court granted summary judgment to Bonner Springs and the County. The judge concluded that Soto's petition as to the Bonner Springs entities and individual officers was barred by the statute of limitations, that there was probable cause to believe there was a valid warrant for Soto's arrest, and that the discretionary function exception applied to all of Soto's claims against both Bonner Springs and the County. Soto appealed only the judge's order granting summary judgment to the County. The Court of Appeals affirmed on the basis of the discretionary function exception, and we granted Soto's petition for review.

More facts will be provided as necessary to the analysis.

## ANALYSIS

*Issue: The County is immune from liability under the discretionary function exception of the KTCA.*

The Court of Appeals affirmed the district court's summary judgment on one basis: even if the defendants owed Soto a duty and breached that duty, Soto's claims were barred by the discretionary function exception to liability of the KTCA. As we understand Soto's brief and clarifying oral arguments to this court, he makes no federal claims. We further understand his arguments on appeal are limited to (1) once he asserted a claim of mistaken iden-

tity, County detention personnel had an affirmative duty to investigate his claim, and (2) that they lacked discretion to detain him without investigation.

For purposes of our review, we assume, but do not decide, that a duty existed. As discussed below, we agree with the district court and the Court of Appeals: the County is immune from liability under the discretionary function exception.

### Standard of Review

The district court's conclusion that the County is immune from liability under an immunity exception of the KTCA is a matter of law. See *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 622, 938 P.2d 1293 (1997). Therefore, our review is de novo. See *Stroda v. Joice Holdings*, 288 Kan. 718, 720, 207 P.3d 223 (2009) (when material facts are undisputed, appellate review of the district court's grant of summary judgment is de novo); *Wilson v. Kansas State University*, 273 Kan. 584, 586-87, 44 P.3d 454 (2002).

### Discussion

The KTCA is an "open ended" act, meaning that liability is the rule and immunity is the exception. *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 364, 819 P.2d 587 (1991). The burden is on the government to establish immunity under one of the exceptions. 249 Kan. at 364.

We recently discussed the analytical framework of the KTCA in *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585, 214 P.3d 1173 (2009):

"Hence, the analytical matrix established by the legislature in enacting the KTCA dictates that a governmental entity can be found liable for the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment only if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies."

We will follow the framework affirmed by *Adams*.

### A private person could be held liable for false imprisonment and arrest

A claim of false imprisonment and arrest may be asserted against either a private individual, a private corporation, or state officials.

See, *e.g.*, *Alvarado v. City of Dodge City*, 238 Kan. 48, 58, 708 P.2d 174 (1985) (discussing the history of false arrest and imprisonment as it applies to merchants); *Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 241 P.2d 1192 (1952); *Lewis v. Montgomery Ward & Co.*, 144 Kan. 656, 62 P.2d 875 (1936). In fact, the Kansas Legislature has enacted a "merchant defense" statute, K.S.A. 21-3424(C), that this court has interpreted as applying to both criminal prosecutions and civil claims for false arrest and imprisonment. *Codner v. Skaggs Drug Centers, Inc.*, 224 Kan. 531, 533, 581 P.2d 387 (1978). Because a private person could be liable under the same circumstances, we must address whether a statutory exception to liability, *i.e.*, a governmental immunity, applies.

### Discretionary function statutory exception to liability

The immunity relied upon by the district court and Court of Appeals, the governmental discretionary function exception, is contained in K.S.A. 2003 Supp. 75-6104(e) and states:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(e) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved."

The term "discretionary function or duty" is not defined in the KTCA. To determine whether the function or duty is discretionary, Kansas courts look foremost to the nature and quality of the discretion exercised. *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 452, 912 P.2d 729 (1996); *Robertson v. City of Topeka*, 231 Kan. 358, 361-62, 644 P.2d 458 (1982). The mere application of any judgment is not the hallmark of the exception. See *Allen v. Kansas Dept. of S.R.S.*, 240 Kan. 620, 623, 731 P.2d 314 (1987) (whether employee used wet or dry mop or plain water or detergent in cleanup of vomit on floor is ministerial because these choices do not involve any particular skill or training; discretionary function exception does not apply).

We have consistently recognized that where there is a "clearly defined mandatory duty or guideline, the discretionary function exception is not applicable." *Nero v. Kansas State University*, 253 Kan. 567, 585, 861 P.2d 768 (1993); see *Barrett v. U.S.D. No. 259*, 272 Kan. 250, 263, 32 P.3d 1156 (2001); *Kansas State Bank & Trust Co.*, 249 Kan. at 365. A mandatory guideline can arise from agency directives, case law, or statutes. *Barrett*, 272 Kan. at 263 (stating legal duty may arise by case law or by statute); *Bolyard*, 259 Kan. at 452-54 (agency directives).

However, if there is a duty owed (and breached), the discretionary function exception to liability is not necessarily barred as a defense. If it were otherwise, there would be little, if any, need for the existence of this statutory immunity for the tortfeasor's negligence. See *Schmidt v. HTG, Inc.*, 265 Kan. 372, 392, 961 P.2d 677 (1998) ("Although governmental entities do not have discretion to violate a legal duty, we have not held that the existence of any duty deprives the State of immunity under the discretionary function exception. If such were the case, K.S.A. 75-6104(e) could never apply in a negligence action, for in order to recover for negligence, a plaintiff must establish the existence of a duty."); see also *Barrett*, 272 Kan. at 264 (the discretionary function exception provides a defense against ordinary negligence).

As we understand Soto's basic argument, he first contends that the County detention personnel possessed a mandatory duty to investigate his claims under agency directives, a duty they had no discretion to fail to perform. He refers to the County's policy, Wyandotte County Sheriff's Office Detention Center Standard Operating Procedure No. C-100. It directs jail personnel during the intake process to "receive and review" the documents of those persons arrested "with an eye for the content and the correct statement of charges." Soto contends that this document expresses a policy reflecting the duty assigned to the County in K.S.A. 22-2304, which imposes a duty of care that the person in the warrant be identified with reasonable certainty. Subsection (1) of that statute states in relevant part:

"The warrant shall be signed by the magistrate and shall contain the name of the defendant, or, if his name is unknown, any name or description by which he can be identified with reasonable certainty."

The Court of Appeals panel pointed out that all of the detention officers, in reviewing the arrest documents, performed the duties stated in Procedure No. C-100. Nothing in the Procedure required the officers to perform a broader investigation, *e.g.*, compare fingerprints, access photographs, or take a DNA sample for potential analysis. Further, as the County pointed out, nothing in K.S.A. 22-2304(1) limits the officers' discretion under the current facts. By its plain language, the statute applies to the magistrate issuing the warrant and requires a description only if the name of the defendant is unknown. As a result, the County contends that the statute does not apply to the actions of its detention officers. We agree with the rationale of the County and the Court of Appeals.

Soto next points to excerpts from a deposition of Lt. Tracy McCullough of the Wyandotte County Sheriff's Department that he alleges were made in the unrelated case of *Echols v. Unified Government of Wyandotte County/Kansas City, Kan.*, Case No. 04-2484 (D. Kan. 2004). There, Lt. McCullough stated her general opinion of the usual intake procedure. She testified that even if she did not believe an inmate's claim that he or she was not the person named in the warrant, she would look into it. The County responds that she in no way opined that the County had a policy for such circumstances. Rather, Lt. McCullough testified about what she had the discretion to do when someone made a claim of mistaken identity during the booking process. We agree. McCullough was not expressing a County policy or her duty; only her individual practice. As additional support for this conclusion, we observe that Soto failed to controvert a material fact asserted by the County in its motion for summary judgment that was contained in an affidavit from a department captain, James Eickhoff: "The decision about whether to investigate a claim of mistaken or wrongful arrest was left to the discretion of the booking officer or intake supervisor. The decision about how to conduct such an investigation also was left to the booking officer's or intake supervisor's discretion."

Soto next argues that the failure of County detention personnel to ensure with reasonable certainty that they were holding the correct person amounts to wanton conduct. He appears to make this

argument because wanton conduct is not covered by the discretionary function exception. See *Barrett*, 272 Kan. at 264.

Wantonness has long been defined in Kansas case law:

"A wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result." *Saunders v. Shaver*, 190 Kan. 699, 701, 378 P.2d 70 (1963).

See *Reeves v. Carlson*, 266 Kan. 310, 313-14, 969 P.2d 252 (1998).

However, there is no evidence from which a reasonable jury could conclude that the County personnel acted in a wanton manner, *e.g.*, with a reckless disregard for Soto's rights and complete indifference to the probable consequences. By contrast, we generally note that Deputy Ornelas called the Johnson County warrants deputy, provided Soto's personal information from Stites' arrest report and, after relating this information, received confirmation of the continuing validity of the warrant under which Soto had been arrested and confirmation that Johnson County wanted Soto detained. See *Warner v. Stover*, 283 Kan. 453, 456, 153 P.3d 1245 (2007) (in considering summary judgment, court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).

Soto additionally argues that the County had notice that a failure to investigate a claim of mistaken identity and a continued detention of an individual whom it should know is probably not the person named in the warrant would make the County liable for false imprisonment. In support of this argument, Soto lists four cases where he alleges the County was successfully sued for other false arrest and false imprisonment claims. He refers to these cases as: *"Daniel Kirkpatrick v. Unified Government of Wyandotte County/Kansas City, Kansas, et al.*[,] 99-2450 (D. Kan[.] 1999); *Alonzo Echols v. Unified Government of Wyandotte County/Kansas City, Kansas, et al.*, 01-2291 (D. Kan[.] 2001)[;] *Fugate v. Unified Gov't of Wyandotte County et al*[.], 01 CV 02069 (D. Kan[.]

2001); [and] *Alonzo Echols v. Unified Government of Wyandotte County/Kansas City, Kansas, et al.*[,] 04-2484 (D. Kan. 2004)."

The Court of Appeals panel held that the prior litigation did not provide notice to the County because there was no proof that officers involved in the instant case were involved in, or had any knowledge of, the prior court actions. See *Soto*, 38 Kan. App. 2d at 387. More important, in Soto's argument he fails to indicate how these prior cases provided, or created, a "clearly defined mandatory duty or guideline," *i.e.*, to show that as a matter of law the discretionary function exception cannot apply. See *Nero*, 253 Kan. at 585.

We turn now to Soto's basic argument: that detention personnel, *i.e.*, Ornelas, had no discretion to detain him without investigating his claim of mistaken identity.

We begin our analysis by observing that Soto points to no Kansas case law establishing an affirmative duty for officers to investigate all claims of mistaken identity. Our research identifies none. Our case law does provide some guidance on discretion from other contexts, however.

In *G. v. State Dept. of SRS*, 251 Kan. 179, 833 P.2d 979 (1992), this court held that the decision by the Kansas Department of Social and Rehabilitation Services (SRS) to remove a child from a foster care home after an investigation and finding of sexual abuse was within the discretionary function exception. In *G.*, there were no specific guidelines to determine the proper course of action after a finding of sexual abuse. Similarly, in *Beebe v. Fraktman*, 22 Kan. App. 2d 493, 496, 921 P.2d 216 (1996), the Court of Appeals cited *G.* to support its holding that the SRS's decision *whether* to open a file for further investigation of two episodes of allegations of child neglect or abuse by a father is a discretionary function. And in *Burney v. Kansas Dept. of SRS*, 23 Kan. App. 2d 394, 931 P.2d 26 (1997), the Court of Appeals then relied upon *Beebe* to hold that the SRS's *manner* of conducting an investigation into a charge of child abuse by a teacher is a discretionary function:

"The next claim of liability is based on the *failure of SRS to conduct a proper investigation.* We have held the decision as to whether to open a file for further investigation is a discretionary function. *Beebe*, 22 Kan. App. 2d at 496. *We hold that the manner of conducting an investigation into a charge of child abuse is also*

*a discretionary function.* SRS is granted immunity from liability in the performance of discretionary functions by the provisions of 75-6104(e). If there was any fault or negligence on the part of SRS in conducting the investigation into the allegations of child abuse in this case, no liability could be predicated on that fault under the aforementioned section of the Kansas Tort Claims Act." (Emphasis added.) 23 Kan. App. 2d at 402-03.

Likewise, in *Bolyard*, 259 Kan. 447, this court ruled that SRS's decision to temporarily place children with their mother was entitled to immunity under the discretionary function exception:

"Plaintiffs complain specifically that SRS was *negligent in failing to talk to* [*mother's*] *parole officer* and failing to adequately monitor the household. The means by which placements are monitored and *the people to whom social workers converse in supervising placements are not subject to any carefully drawn, precise legal standard,* but involve discriminating judgment between competing interests and are clearly beyond the nature and character of acts the legislature intended to be subject to judicial review." (Emphasis added.) 259 Kan. at 455-56.

Similarly, in *Schmidt*, 265 Kan. 372, plaintiffs' daughter was raped and killed by a former restaurant coworker who had been conditionally released from prison. They brought a personal injury and wrongful death action against various parties, including a claim alleging that the Kansas Department of Corrections and a state parole officer were liable for failure to notify their daughter's employer of her coworker's prior convictions for rape and aggravated sodomy. This court held that the officer's failure to disclose the criminal history to the employer fell within the discretionary function exception.

Likewise, in *Jarboe*, 262 Kan. 615, plaintiffs' son was shot by an escapee from a youth residential facility where the shooter had been placed by SRS following a juvenile court adjudication. Plaintiffs pursued several claims for personal injuries against several entities, including a claim against SRS for the shooter's negligent placement in the facility. This court rejected this claim, holding that the placement of a juvenile offender at a residential facility was a discretionary function. 262 Kan. at 631; *cf. Woodruff v. City of Ottawa*, 263 Kan. 557, 566-67, 951 P.2d 953 (1997) (police decision whether to take an intoxicated individual into custody is discretionary and entitled to immunity).

Based upon our review of this Kansas case law, we hold that the County detention officers' actions were discretionary and therefore are afforded immunity under the KTCA. At least one court has held that allegations of mistaken identity at jail are not unusual. *Davis v. Klevenhagen*, 971 S.W.2d 111 (Tex. App. 1998). The decision whether to do anything about a claim of mistaken identity may or may not be discretionary. *Cf. Beebe*, 22 Kan. App. 2d at 496 (whether to open file to investigate possible child abuse by father is discretionary). That is a determination we need not make today under our case's facts. But the precise steps to be taken by detention personnel to consider such a claim, *e.g.*, to verify personally identifying information, is discretionary. *Burney*, 23 Kan. App. 2d at 402-03 (manner of conducting an investigation into charge of child abuse is discretionary); *cf. Bolyard*, 259 Kan. at 455-56 (people to whom social workers converse in supervising child placements are not subject to any carefully drawn, precise legal standard).

Here Deputy Ornelas gave the Johnson County deputy at the warrants desk the information in Stites' arrest report, including Soto's first name, last name, middle initial, date of birth, and the number of the warrant on which Soto had been arrested. After receiving this information, the Johnson County deputy then informed Ornelas that the "warrant existed for Mr. Soto's arrest" and requested Soto's detention. While in retrospect it appears that Johnson County had a different middle initial and a different date of birth than those provided by Ornelas, there is no evidence its deputy advised Ornelas of any discrepancies. Indeed, Johnson County apparently confirmed Ornelas' information because its deputy then requested that Ornelas continue to detain Soto. Moreover, per Stites' experience as described in his uncontroverted affidavit—and as suggested by Soto's counsel's concession at oral arguments—if Ornelas had given to Johnson County the number of Soto's driver's license from the arrest report, that identifying information would also have been corroborated.

The Court of Appeals looked to *Davis*, 971 S.W.2d 111. In *Davis*, the deputy who worked in the bonding department of a jail was advised by a clerk that a jail visitor had an outstanding warrant.

The visitor denied he was the person sought. Because this was not "an unusual response," the deputy consulted the identifiers appearing in the computer system, compared them to the driver's license, and determined the visitor was indeed the person sought in the warrant. 971 S.W.2d at 112. After confirming the warrant's validity, the deputy arrested him. It was later shown to be a misidentification, and the arrestee sued for false arrest.

The *Davis* court held that the deputy's investigation to determine whether Davis was the same individual named in the warrant was discretionary and therefore he was immune from liability for damages under Texas law:

"We believe the evidence shows that [the deputy's] investigation culminating in his decision to arrest Davis required personal deliberation, decision and judgment and was a discretionary function. [Citation omitted.] *An officer's decision regarding 'if, how, and when to arrest a person' is discretionary.* [Citation omitted.] *Likewise, a police officer is engaged in a discretionary function in determining 'how to investigate, and to what extent to investigate before seeking a warrant.'* [Citation omitted.] We see no reason why the same investigatory discretion should not apply to an officer seeking to determine whether a presenting individual is the same individual named in an arrest warrant. In making this determination, [the deputy] was required to 'pass on facts and determine his actions by the facts found,' and was thus exercising a discretionary function." (Emphasis added.) 971 S.W.2d at 117-18.

The rationale and holding of the *Davis* court is consistent with the Kansas case law on the discretionary function exception as set forth above.

Soto primarily refers us to *Perez-Torres v. State*, 42 Cal. 4th 136, 64 Cal. Rptr. 3d 155, 164 P.3d 583 (2007). There, Lenin Freud Perez-Torres had been arrested for, but not charged with, spousal abuse. He was fingerprinted and assigned a criminal identification and information number. Later, one Lenin Salgado Torres, a/k/a Lenin Freud Perez, was charged with spousal abuse, fingerprinted, assigned a criminal identification and information number, and sent to prison after his guilty plea. Perez-Torres' number was mistakenly entered into Salgado's parole database.

Perez-Torres was later arrested for DUI. The parole database mistakenly indicated that he (by Salgado's name) was on parole and was therefore in violation. He was arrested and upon his jail

arrival advised his parole agent the authorities had the wrong man. Twenty-five days later, after fingerprint comparison, he was released from custody because of mistaken identity. He then brought suit for false imprisonment.

The *Perez-Torres* court rejected the State's discretionary function immunity defense under these facts, distinguishing between basic policy decisions and actions simply implementing them:

"Here, the state's decision to revoke Salgado's parole, based on the mistaken belief that plaintiff, a nonparolee, was Salgado, was—like the decision in *Johnson* [*v. State*, 69 Cal. 2d 782 (1968),] to place the dangerous youth on parole with the foster parents—a basic policy decision and thus within the governmental immunity provision of section 845.8(a) [California statute which includes a discretionary immunity element]. After that basic policy decision was made, however, the state defendants' conduct in keeping plaintiff in jail after they knew or should have known that he was the wrong man was—like the failure in *Johnson* to warn the foster parents of the youth's dangerous propensities—an action implementing the basic policy decision and thus outside the statutory immunity, making it subject to legal redress on the question of negligence by the state. [Citation omitted.] Just as [statutory discretion element of immunity] was inapplicable in *Johnson* to the state's failure to warn the foster parents, so too here it is inapplicable to the state defendants' decision to keep plaintiff in jail after they knew or should have known he was not parolee Salgado." 42 Cal. 4th at 135.

The *Perez-Torres* approach—determining whether the discretionary function exception applies by differentiating between basic policy decisions and actions implementing the basic policy decisions—is inconsistent with Kansas case law. In *Robertson v. City of Topeka*, 231 Kan. 358, 361, 644 P.2d 458 (1982), we rejected the similar "planning level-operational level" analysis to determine whether the discretionary function exception applied. We later confirmed that the Kansas analysis is instead based upon the "nature and quality of the discretion" exercised:

"In *Robertson v. City of Topeka*, 231 Kan. 358, 361-62, 644 P.2d 458 (1982), we determined that in deciding whether the discretionary function exception applies, it is the nature and quality of the discretion exercised which should be the focus rather than the status of the employee exercising the discretion. The test is whether the judgment of the governmental employee is of the nature and quality which the legislature intended to put beyond judicial review." *Bolyard*, 259 Kan. at 452.

In short, we conclude that a detention officer's decision on how to investigate Soto's claims of mistaken identity was of the "nature and quality which the legislature intended to put beyond judicial review." *Bolyard*, 259 Kan. at 452.

Judgment of the Court of Appeals affirming the summary judgment granted in favor of the County is affirmed. Judgment of the district court is affirmed.