No. 116,883

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOEANN WILLIAMS, ERIC WILLIAMS,
HAZEL S. NOBLE, W.J.W., and L.L.W.,
*Appellants*,

v.

C-U-OUT BAIL BONDS, LLC,
*Defendant*,

and

CITY OF OVERLAND PARK, KANSAS,
*ex rel*. OVERLAND PARK POLICE DEPT.,
*Appellee*.

SYLLABUS BY THE COURT

1.

When reviewing a district court's decision to grant a motion to dismiss for failure to state a claim, we must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn from the facts alleged. We are not required to treat the legal conclusions contained within the petition as also being true.

2.

Our standard for considering a motion to dismiss for failure to state a claim, unlike the federal standard, does not require facial plausibility.

3.

Actionable negligence must be based on a duty owed the plaintiff by the defendant. The determination of whether a duty exists is a question of law to be decided by the court.

1

4.

      The duty element of a negligence claim against a governmental entity cannot be established by showing a duty owed by a governmental entity to the public at large. Police officers generally owe the duty of preserving the peace to the public at large rather than to any individual.

5.

      Generally, a special duty is owed by a governmental agency to an injured person, rendering the public duty doctrine inapplicable to their encounter, when: (1) a special relationship existed between the governmental agency and the wrongdoer, i.e., the wrongdoer was in the state's custody or care; (2) a special relationship existed between the governmental agency and the injured person, i.e., the injured person was in the state's custody or care; or (3) the governmental agency performed an affirmative act that caused injury or made a specific promise or representation that under the circumstances created a justifiable reliance on the part of the person injured.

6.

      As an intermediate appellate court, we follow the decisions of the Kansas Supreme Court unless we find some clear signal of a shift in its recent decisions that would impact an earlier ruling. We have no authority to determine what the law should be—we merely apply the law as it is.

7.

      The Kansas Tort Claims Act allows individuals to bring claims against governmental entities for the negligent or wrongful acts of their employees. Government liability is the rule and immunity the exception.

8.

The Kansas Tort Claims Act provides an exception to liability for governmental entities and employees engaged in the exercise or performance or the failure to exercise or perform a discretionary function or duty.

9.

To determine whether immunity attaches to discretionary functions, we first consider whether the precise governmental conduct at issue involved an element of individual judgment or choice. We then ask whether that decision was of the nature and quality which the legislature intended to put beyond judicial review.

10.

To the extent the police officers merely responded to their dispatcher's call and went to Plaintiffs' residence, they took no affirmative acts and owed no duty to the Plaintiffs on which a negligence case could be built. To the extent the police officers took affirmative acts, their investigation and resulting decision not to arrest the bail bondsmen forcibly entering the Plaintiffs' residence fell within the discretionary function exemption to the Kansas Tort Claims Act.

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed August 18, 2017. Affirmed.

*Curtis N. Holmes*, of Holmes Law Office, LLC, of Olathe, for appellant.

*Michael K. Seck*, of Fisher, Patterson, Sayler & Smith, LLP, of Overland Park, for appellee.

Before GREEN, P.J., POWELL and GARDNER, JJ.

GARDNER, J.:  When armed persons tried to ram their way into her home at 11 p.m., Joeann Williams called the police. Police arrived, spoke to the bail bondsmen

3

trying to forcibly enter Joeann's home, then left. The bail bondsmen entered the home but did not find who they were looking for. Joeann and other residents of the home later brought suit against the City for negligent failure to protect them. The district court granted the City's motion to dismiss, finding that the police officers had no duty to protect the Plaintiffs specifically, as opposed to their duty to the public at large, and that the police were entitled to immunity under the discretionary function exception to the Kansas Tort Claims Act. For the reasons stated below, we find no error in those rulings.

FACTUAL AND PROCEDURAL BACKGROUND

We first summarize the relevant factual allegations in Plaintiffs' amended petition. Joeann Williams, Eric Williams, Hazel Noble, W.J.W., and L.L.W. (Plaintiffs) lived together in a single family residence located in Overland Park, Kansas. At approximately 11 p.m., on August 6, 2014, several armed representatives of C-U-Out Bail Bonds LLC arrived at their house to search for Rickesha Wright, the daughter-in-law of Eric and Joeann. Wright was a criminal defendant who had been released on bond and had absconded from the law. As a result, her surety bond which had been paid by C-U-Out was in jeopardy of being revoked.

When the C-U-Out representatives arrived at the Williams' house, Joeann answered the door, told the C-U-Out representatives that Wright was not present, and refused to allow the C-U-Out representatives into the house. The C-U-Out representatives then tried to gain entry by forcing the door open with a steel battering ram. Joeann returned to the door and told the C-U-Out representatives that Wright was not present, that they were frightening everyone inside, and that she intended to call the police. A C-U-Out representative then put his foot in the door and told her that she could be charged with aiding and abetting a felon if she did not allow a search of the house. Joeann then called the Overland Park Police Department for help while she held the door against the C-U-Out representative's foot.

4

Overland Park police officers arrived a few minutes later and spoke with a C-U-Out representative while two other C-U-Out representatives continued their attempts to forcibly enter the house. Eventually, they were successful. Throughout the incident, the police officers remained outside their patrol unit just beyond the curtilage of the home and observed the forcible entry without taking any action. After the representatives of C-U-Out forced their way into the home, Joeann called out to the police officers for assistance. In response, the officers told Joeann that this was outside of their jurisdiction and they could do nothing about it. They then left the scene.

The C-U-Out representatives searched the house but did not find Wright. They left the house but threatened to return and conduct another search for Wright.

The Plaintiffs filed a civil action against C-U-Out and the City of Overland Park (City) *ex rel*. the Overland Park Police Department. They alleged that C-U-Out was liable for trespass, invasion of privacy, and outrage and that the City was liable under the doctrine of respondeat superior for negligent failure to protect. The City responded by filing a motion to dismiss. The district court granted that motion because the Plaintiffs had failed to give notice of their tort action to the City as required. See K.S.A. 2016 Supp. 12-105b(d).

Plaintiffs later filed an amended petition which included the factual assertions stated above. Their claim against the City for negligent failure to protect stated in part:

> "Plaintiffs further allege that once the officers were notified of the call, affirmatively responded to the call, presented themselves at the scene, and were made aware of the circumstances as previously described herein, they had an affirmative duty to remain at the scene in order to protect Plaintiffs until the dangers associated with the confrontation between Plaintiffs and armed representatives of Defendant, C-U-Out who were then attempting forcibly to enter Plaintiffs' private residence had passed."

5

Other paragraphs alleged that officers violated their affirmative duty to protect Plaintiffs when they left the home after having been called to and having appeared at the scene "with full knowledge that armed . . . representatives of a bonding company had expressed their intention to forcibly enter[] the private residence without the permission of the occupants and without legal authority." Plaintiffs further alleged that Wright was not in the home at the time of the above-described incident and that C-U-Out representatives had no personal knowledge or evidence suggesting that she was.

The City filed a second motion to dismiss. The district court granted this motion, finding Plaintiffs had failed to state a claim upon which relief could be granted. The district court held that the police officers owed no duty to Plaintiffs and that the City was immune from liability under the discretionary function exception to the Kansas Tort Claims Act (KTCA). Accordingly, it dismissed the claims against the City. Plaintiffs timely appealed.

WE ADHERE TO OUR TRADITIONAL STANDARD FOR MOTIONS TO DISMISS.

A district court's decision to grant a motion to dismiss presents a question of law subject to our unlimited review. *Cohen v. Battaglia*, 296 Kan. 542, 545, 293 P.3d 752 (2013). When reviewing a district court's decision to grant a motion to dismiss for failure to state a claim, we must accept the facts alleged by the plaintiff as true, "along with any inferences that can reasonably be drawn therefrom." 296 Kan. at 546. Under this standard, if the facts and inferences state a claim on any possible theory, "the district court must be reversed." 296 Kan. at 546 (citing *Zimmerman v. Board of Wabaunsee County Comm'rs*, 293 Kan. 332, 356, 264 P.3d 989 [2011]).

The City invites us to apply a narrower standard adopted by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Under that federal standard, a complaint should be dismissed if it

6

lacks a "set of facts consistent with the allegations in the complaint." 550 U.S. at 563. The pleading must "'contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" 550 U.S. at 555. Federal courts must now decide whether a "claim has facial plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Facial plausibility is shown "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678.

Despite the logical appeal of the federal plausibility standard and despite the similarity of our rule (K.S.A. 2016 Supp. 60-208[a]) to the federal rule (Federal Rule of Civil Procedure 8[a][2]), the Kansas Supreme Court has not adopted the federal standard as its recent case demonstrates:

> "When a defendant uses K.S.A. 2015 Supp. 60-212(b)(6) to challenge the legal sufficiency of a claim, the court must decide the issue based only on the well-pled facts and allegations, which are generally drawn from the petition. Courts must resolve every factual dispute in the plaintiff's favor when determining whether the petition states any valid claim for relief. Dismissal is proper only when the allegations in the petition clearly demonstrate that the plaintiff does not have a claim. *Halley v. Barnabe*, 271 Kan. 652, 656, 24 P.3d 140 (2001) (citing *Ripley v. Tolbert*, 260 Kan. 491, 493, 921 P.2d 1210 [1996], and *Bruggeman v. Schimke*, 239 Kan. 245, 247-48, 718 P.2d 635 [1986]). Likewise, appellate courts reviewing a district court's decision to grant a motion to dismiss will assume as true the well-pled facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013)." *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 767-68, 388 P.3d 84 (2017).

We are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *Majors v. Hillebrand*, 51 Kan.

App. 2d 625, 629-30, 349 P.3d 1283 (2015), *rev. denied* 303 Kan. 1078 (2016). Finding no indication of departure, we apply our traditional standard stated above.

WE DO NOT TREAT LEGAL CONCLUSIONS AS BEING TRUE.

Although our standard for considering a motion to dismiss requires us to accept the well-pleaded factual allegations contained in a petition as true, nothing requires us to treat the legal conclusions contained within the petition as also being true. *Duckworth v. City of Kansas City*, 243 Kan. 386, 391, 758 P.2d 201 (1988). The amended petition's allegation that C-U-Out representatives intended *to enter the house without legal authority* is one such legal conclusion, the truth of which the City has not admitted. The amended petition's allegation that the police officers who responded to the call left with full knowledge that the bail bondsmen were attempting *to enter the house illegally* is another such legal conclusion. The petition omits the underlying factual allegations upon which such legal conclusions could arguably be built, such as whether Rickesha Wright resided at the Williams' house on the date the bail bondsmen invaded it or whether Wright had told the bail bondsmen that she did. See generally K.S.A. 22-2809 (providing any person who is released on an appearance bond may be arrested by such person's surety); K.S.A. 22-2405(3) (giving police authority to use "[a]ll necessary and reasonable force" to "effect an entry upon any building . . . to make an authorized arrest"); *State v. Burhans*, 277 Kan. 858, Syl. ¶ 2, 89 P.3d 629 (2004) (finding a bail bondsman does not have the right to enter the home of a third party, i.e., "where the principal does not reside, where the principal is not seen, and where the bail bondsman does not have reasonable belief of the principal's presence, without the third party's consent"); *United States v. Thompson*, 402 Fed. Appx. 378, 382 (10th Cir. 2010) (unpublished opinion) (resolving whether *Steagald v. United States*, 451 U.S. 204, 101 S. Ct. 1642, 68 L. Ed. 2d 38 [1981] [third-party's home] or *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 [1980] [suspect's home] applies under the first prong of the *Payton* test:  if the officers reasonably believe the suspect lives at the residence, then officers may enter on

8

the authority of the arrest warrant, provided they reasonably believe the suspect is inside, and they do not need a search warrant). We thus do not accept any legal conclusions in the petition as being true.

DID THE OVERLAND PARK POLICE DEPARTMENT OWE A DUTY TO THE PLAINTIFFS?

Applying our standard for considering a motion to dismiss, we first examine whether the district court erred in finding the police officers owed no duty to the Plaintiffs under the facts alleged in the amended petition. Plaintiffs contend the district court erred in dismissing the City from their claim that the City negligently failed to protect them. The four elements of a negligence action are: "a duty owed to the plaintiff, breach of that duty, causation between the breach of duty and the injury to the plaintiff, and damages suffered by the plaintiff. [Citation omitted.]" *Shirley v. Glass*, 297 Kan. 888, 894, 308 P.3d 1 (2013). "Actionable negligence must be based on a duty owed the plaintiff by the defendant." *Robertson v. City of Topeka*, 231 Kan. 358, 363, 644 P.2d 458 (1982). The determination of whether a duty exists is a question of law to be decided by the court, not the jury. See *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983).

*The Public Duty Rule*

Where, as here, a negligence claim is asserted against a governmental agency, the court must consider the "public duty doctrine." This doctrine establishes the general principle that a governmental agency owes duties to the public at large rather than to individuals. See *Robertson*, 231 Kan. at 363; *Commercial Union Ins. Co. v. City of Wichita*, 217 Kan. 44, 53, 536 P.2d 54 (1975). Thus, the duty element of a negligence claim against a governmental entity cannot be established by showing a duty owed by a governmental entity to the public at large. *Keiswetter v. State*, 304 Kan. 362, 365, 373 P.3d 803 (2016). This public duty doctrine, as applied to policing functions, means police officers generally owe the duty of preserving the peace to the public at large rather than

9

to any individual. See *Lamb v. State*, 33 Kan. App. 2d 843, 847, 109 P.3d 1265 (2005); K.S.A. 2016 Supp. 22-2202(m) (defining "law enforcement officer" as "any person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas").

Plaintiffs generally acknowledge this rule but argue that the police officers owed a duty to protect them in this case because a special relationship was created between the police officers and themselves when Joeann called the police, the police officers responded to her call, and the police officers saw others trying to forcibly enter the house.

*The Special Relationship Exception*

To establish the duty element of a negligence claim against a governmental entity, a plaintiff must show that a special relationship exists which gives rise to a special duty owed by the governmental entity to a specific individual. *Keiswetter*, 304 Kan. at 365. This is consistent with the general rule that there is no affirmative duty to prevent a third party from harming others absent a special relationship. *McGee v. Chalfant*, 248 Kan. 434, 438, 806 P.2d 980 (1991).

For purposes of the public duty doctrine, this court has held that a special duty is owed by a governmental agency to a specific individual in three instances:

"(1) a special relationship existed between the governmental agency and the wrongdoer (i.e., the wrongdoer was in the State's custody or care); (2) a special relationship existed between the governmental agency and the injured person (i.e., the injured person was in the State's custody or care); or (3) the government agency performed an affirmative act that caused injury or made a specific promise or representation that under the circumstances created a justifiable reliance on the

10

part of the person injured. [Citation omitted.]" *Potts v. Board of Leavenworth County Comm'rs*, 39 Kan. App. 2d 71, 81, 176 P.3d 988 (2008).

See generally *Glaser v. U.S.D. No. 253*, 271 Kan. 178, 191, 21 P.3d 573 (2001) (discussing the threshold requirement of affirmative action); *Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1033, 667 P.2d 380 (1983) (recognizing affirmative acts may create a duty).

Plaintiffs argue only the third means by which a special duty may be created—that the police performed an affirmative act that caused them injury.

*Affirmative Acts by Police That Cause Injury*

In support of their position that police officers have an affirmative duty to protect individuals who request aid to prevent foreseeable and imminent harm, Plaintiffs cite only cases from Montana and New Mexico. See, *e.g.*, *Flores v. Danfelser*, 127 N.M. 571, 985 P.2d 173 (1999). But that caselaw is neither binding on nor persuasive to us. As an intermediate appellate court, "we follow the decisions of our Supreme Court unless we find some clear signal of a shift in their recent decisions that would impact an earlier ruling. *State v. Blaurock*, 41 Kan. App. 2d 178, 214, 201 P.3d 728 (2009)." *State v. Craig*, No. 99,527, 2009 WL 929094, at *1 (Kan. App. 2009) (unpublished opinion). We have no authority to determine what the law should be—we merely apply the law as it is. *Cf. Smith v. Hy-Vee Food Stores*, No. 105,911, 2011 WL 6385658, at *2 (Kan. App. 2011) (unpublished opinion) ("[I]ntermediate appellate courts have no business tinkering with statutory language in the name of advancing public policies as a general matter and most especially not when a superior court has said otherwise"). Thus, we adhere to our Kansas precedent relating to affirmative acts, as noted below.

Kansas cases illustrate that affirmative acts by police causing injury, such as placing an individual under arrest, committing an assault, making a false arrest, or using unnecessary force, may create a special duty. *Hendrix v. City of Topeka*, 231 Kan. 113, 122-23, 643 P.2d 129 (1982) (citing *Bradford v. Mahan*, 219 Kan. 450, 548 P.2d 1223 [1979]); *Gardner v. McDowell*, 202 Kan. 705, 451 P.2d 501 (1969); *Bukaty v. Berglund*, 179 Kan. 259, 294 P.2d 228 [1956]). *Hendrix* concluded:

> "A police officer is not an insurer against all harm for the people with whom he has official contact. Just as with defendant Harder, the plaintiffs had a duty to make at least some allegation which tended to establish that the breach of some special duty owed decedent caused or contributed to his death and thereby render the officer's common law immunity inapplicable." 231 Kan. at 123.

*Hendrix* affirmed dismissal of a complaint which alleged that a police officer's negligence in removing a former state hospital patient from the hospital premises had caused the patient's death. The complaint failed to state a claim for relief because it did not allege that the officer had breached some special duty owed to the patient which would render the officer's common-law immunity inapplicable.

The case most analogous to ours is *Potts.* There, plaintiffs brought a negligence action against the county based on the refusal of emergency-medical technicians (EMTs) to transport their relative to a hospital against her wishes. Plaintiffs claimed the EMTs had a special relationship with the woman because EMTs had performed the affirmative act of responding to the call for an ambulance. By failing to take her to the hospital, the plaintiffs claimed, the woman's chance of surviving later surgery was reduced. We found that by responding to Potts' 911 call, the EMTs had not performed an affirmative act sufficient to create a special duty, stating:

> "[S]everal analogous situations have arisen in which Kansas courts have routinely found that no special duty existed independent of that already required by law or agency

12

regulation. See, *e.g.*, *Fettke v. City of Wichita,* 264 Kan. 629, 636-37, 957 P.2d 409 (1998) (City owed no special duty to withhold identity of police officer involved in fatal shooting outside of existing statement in manual requiring it to do so); *Woodruff v. City of Ottawa,* 263 Kan. 557, Syl. ¶ 9, 951 P.2d 953 (1997) (oral instruction from one officer to another to take an intoxicated person into custody did not create a special duty to plaintiffs); *Jarboe,* 262 Kan. at 629-34 (no special duty owed to man shot by an escapee from a residential facility even though SRS and County failed to follow internal policies for placement and supervision of escapee at residential facility); *Kirk,* 27 Kan. App. 2d at 951-53 (City owed no special duty to wife killed by husband, although wife had applied for and received protection from abuse order and requested police presence at her home; City made no special promise to wife to have constant presence at her home); *Beebe v. Fraktman,* 22 Kan. App. 2d 493, 495-97, 921 P.2d 216 (1996) (SRS owed no special duty to a child to investigate abuse even after agency received two reports that child's father was abusing her and promised to follow-up on at least one of the reports)." *Potts*, 39 Kan. App. 2d at 82.

In contrast, we recently found troopers' actions fit within the "affirmative act" exception in *Drew v. State*, No. 113,055, 2016 WL 5867233, at *7 (Kan. App. 2016) (unpublished opinion). There, officers had tried to direct ambulance-routing decisions by arguing with EMS personnel about which hospitals the injured people could be sent to, thus going beyond their general duties to protect the public. Similarly, in *Bieker v. Kansas Dept. of Wildlife, Parks, & Tourism*, No. 110,984, 2015 WL 326625 (Kan. App.) (unpublished opinion), *rev. denied* 302 Kan. 1008 (2015), we reversed the dismissal of a petition for failure to state a claim where a wrongful death petition alleged a Kansas Department of Wildlife, Parks, and Tourism employee had required a man to leave his boat in the lake in the middle of the night, causing him to drown. There, the employee had demanded that the boater get off the water, the boater had no valid option but to comply with the command to come ashore, and the boater's compliance lead to his death. We found those allegations may be sufficient to show a special relationship, excepting the employee from the general rule that would immunize him and the State from liability

for claims arising from the performance of his law enforcement duties. 2015 WL 326625, at *4.

*The Plaintiffs' Amended Petition*

We review the well-pleaded allegations of the Plaintiffs' petition in light of our Kansas precedent. Those allegations fail to show that the police officers took any affirmative acts after arriving at the house which could have caused the Plaintiffs' injury. Plaintiffs contend that the mere act of responding to their call for help is a sufficient affirmative act to create a special relationship, but under that view, every response by a police officer would give rise to a special relationship. Here, however, as in *Potts*, the only affirmative act taken by the government employees—responding to a 911 call—was clearly within the officers' duties under statutes or agency regulations to preserve the peace and protect public rights. See 39 Kan. App. 2d at 82-83; K.S.A. 13-1339. Failing to intervene is an omission or an inaction which cannot reasonably be construed under our precedent as the performance of an affirmative act which could create the special relationship necessary to fall within the exception to the public duty doctrine. Nor did the officers' act of responding to the Plaintiffs' call for help, as they were duty-bound to do, arguably cause Plaintiffs any injury. Instead, according to the amended petition, it was the officers' failure to intervene that injured them.

Nothing in the pleadings suggests that any kind of special relationship may have existed between the Plaintiffs and the police officers. Thus, the Plaintiffs cannot maintain a negligence action against the City. See *Keiswetter*, 304 Kan. at 365.

14

IS THE CITY OF OVERLAND PARK IMMUNE FROM LIABILITY UNDER THE KANSAS TORT CLAIMS ACT?

In addition to finding no duty, the district court found the police officers were entitled to immunity pursuant to the discretionary function exception of the KTCA. That exception provides that a governmental employee acting within the scope of employment shall not be liable for damages resulting from "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." K.S.A. 2016 Supp. 75-6104(e). The KTCA contains two other exceptions to liability related to police functions, but the City does not assert them here. See K.S.A. 2016 Supp. 75-6104(c) (exempting "enforcement of or failure to enforce a law, whether valid or invalid, including, but not limited to, any statute, rule and regulation, ordinance or resolution"); K.S.A. 2016 Supp. 75-6104(n) (exempting "failure to provide, or the method of providing, police or fire protection").

In finding the discretionary function exception applicable, the district court relied on *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458 (1982). Plaintiffs argue that *Robertson* is factually distinguishable and that it cannot be a discretionary function for police officers to stand by and watch while a serious crime is committed in their presence.

In *Robertson*, Robertson called the police to remove an intoxicated trespasser from his property. Robertson advised the police that the trespasser had no right to be on the property and that the trespasser was likely to burn down Robertson's house if the police failed to act. The police did not remove the trespasser but instead ordered Robertson to leave the premises. Approximately 15 minutes later, the trespasser set Robertson's house ablaze. *Robertson* held that the police conduct was discretionary and the discretionary function exception to the KTCA precluded liability. 231 Kan. at 362-63. Plaintiffs argue

15

that *Robertson* is distinguishable because the police officers who responded to Robertson's call took affirmative acts in an attempt to keep the peace, but those who responded to Joeann's call failed to take any action, so exercised no discretion.

*The KTCA's Liability Rule*

Before the enactment of the KTCA, police officers were generally immune from liability on claims arising from performance or nonperformance of an officer's general duties to prevent crime and enforce laws. *Dauffenbach*, 233 Kan. at 1033. The Kansas legislature modified the common-law doctrine of sovereign immunity by enacting the KTCA. After the enactment of the KTCA, governmental entities could be held liable for the "negligent or wrongful act or omission of any of its employees while acting within the scope of their employment . . . if (1) a private person could be liable under the same circumstances and (2) no statutory exception to liability applies." *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 585, 214 P.3d 1173 (2009). Generally, "[l]iability is the rule, and immunity is the exception for governmental entities sued under the KTCA." *Keiswetter*, 304 Kan. at 366.

*The KTCA's Discretionary Function Exception*

Whether an exception to the KTCA applies and renders a governmental entity immune from tort liability is a question of law and is subject to unlimited appellate review. 304 Kan. at 366. The burden of establishing immunity under an exception to the KTCA is on the government entity claiming immunity. *Soto v. City of Bonner Springs*, 291 Kan. 73, 78, 238 P.3d 278 (2010).

Under the discretionary function exception of the KTCA, governmental entities are immune from tort claims which arise from the exercise or failure to exercise discretionary functions. K.S.A. 2016 Supp. 75-6104(e). We examine whether the

16

discretionary function exception applies to the police officers' affirmative acts of investigating the bail bondsmen's actions that night and of determining not to arrest them. The legislature has not defined what it meant by the term "discretionary function" and so has shifted that obligation to the courts. *Hopkins v. State*, 237 Kan. 601, 610, 702 P.2d 311 (1985). The Kansas Supreme Court has defined and described that term within the meaning of the KTCA as follows:

> "'Discretion' has been defined as the power and the privilege to act unhampered by legal rule. It is also defined as the capacity to distinguish between what is right and wrong, lawful and unlawful, wise or foolish, sufficiently to render one amenable and responsible for his acts. Black's Law Dictionary 553 (4th ed. 1951).
>
> "Discretion implies the exercise of discriminating judgment within the bounds of reason. *Sanford v. Smith,* 11 Cal. App. 3d 991, 1000, 90 Cal. Rptr. 256 (1970). It involves the choice of exercising of the will, of determination made between competing and sometimes conflicting considerations. Discretion imparts that a choice of action is determined, and that action should be taken with reason and good conscience in the interest of protecting the rights of all parties and serving the ends of justice." *Hopkins*, 237 Kan. at 610.

The Kansas Supreme Court has recently recognized several principles that guide our application of the discretionary function exception:

> "(1) '[T]he discretionary function primarily involves policy-oriented decisions and decisions of such a nature that the legislature intended them to be beyond judicial review,' (2) 'the immunity does not depend upon the status of the individual exercising discretion and thus may apply to discretionary decisions made at the operational level as well as at the planning level,' and (3) 'the discretionary function does not encompass conduct that is deemed "ministerial," i.e., conduct that involves no discretion.' Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years,* 52 Kan. L. Rev. 939, 960 (2004)." *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 235, 262 P.3d 336 (2011).

17

"The necessity that the actor employ expertise, whether educational or experiential, also is relevant to determining whether an action is discretionary or ministerial. See *Allen*, 240 Kan. at 623 (employee's action not discretionary when decision on how to clean vomit from floor did 'not invol[ve] any particular skill or training')." *Thomas*, 293 Kan. at 234-35.

The Kansas Supreme Court has repeatedly emphasized the mandatory versus permissive character of direction given to the defendant actor. *Thomas*, 293 Kan. at 235.

> "'[W]here there is a "clearly defined *mandatory* duty or guideline, the discretionary function exception is not applicable."' (Emphasis added.) [Citations omitted.] For purposes of the exception, '[a] *mandatory* guideline can arise from agency directives, case law, or statutes.' (Emphasis added.) [Citations omitted.] Such a guideline leaves little to no room for individual decision making, exercise of judgment, or use of skill, and qualifies a defendant's actions as ministerial rather than discretionary. [Citations omitted.]" *Thomas*, 293 Kan. at 235.

Kansas caselaw demonstrates that the discretionary function exception to the KTCA generally precludes liability for negligence actions relating to investigations and arrests. For example, in *Soto*, our Supreme Court held that county detention officers' investigation of a prisoner's claim of mistaken identity was discretionary. 291 Kan. at 85. Similarly, our Supreme Court held that the City of Ottawa was immune from liability under the discretionary function exception when police failed to arrest an intoxicated individual who subsequently caused an auto accident. *Woodruff v. City of Ottawa*, 263 Kan. 557, 566, 951 P.2d 953 (1997). Additionally, Kansas courts have consistently held that investigations by the Kansas Department of Social and Rehabilitation Services are discretionary functions. See *Soto*, 291 Kan. at 285; *Roe v. Kansas Dept. of SRS*, 278 Kan. 584, 593, 102 P.3d 396 (2004), and cases cited therein.

18

*The Plaintiffs' Amended Petition*

With those general legal principles in mind, we examine the Plaintiffs' amended petition. It alleges that police officers arrived at the Williams household, spoke to a bail bondsman, and then decided not to intervene. The petition does not allege what information the officers may have learned from the bail bondsman.

We first ask whether the officers' act or omission was discretionary in nature—did it involve an element of judgment or choice? See *Robertson*, 231 Kan. at 362. The amended petition shows that it did. The officers had to decide whether to arrest the bail bondsmen or whether to permit the bail bondsmen to forcibly enter the Williams' house in search of Rickesha Wright. The police officers were placed in a situation in which they had to exercise judgment to determine between the competing and conflicting considerations of the Plaintiffs and of the bail bondsmen. Here, as in *Robertson*, "the officers had no clear-cut remedy." 231 Kan. at 362.

We next ask whether the officer's decision was of the "nature and quality which the legislature intended to put beyond judicial review." *Bolyard v. Kansas Dept. of SRS*, 259 Kan. 447, 452, 912 P.2d 729 (1996). "'The more a judgment involves the making of policy the more it is of a "nature and quality" to be recognized as inappropriate for judicial review.'" *Bolyard*, 259 Kan. at 452 (quoting *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 365, 819 P.2d 587 [1991]).

In *Bolyard*, the Kansas Supreme Court found the means by which the Department of Social and Rehabilitation Services monitors its placements, and the people to whom social workers converse in supervising placements, are discretionary judgments that are beyond the nature and character of acts the legislature intended to be subject to judicial review. 259 Kan. at 455-56. Similarly, in *Soto*, the Kansas Supreme Court found a detention officer's decision on how to investigate Soto's claims of mistaken identity was

19

of the "'nature and quality which the legislature intended to put beyond judicial review.'" 291 Kan. at 88.

Here, no mandatory duty or guideline has been shown that would have governed the means by which the police officers investigated the situation. And a plain reading of our statute authorizing law enforcement officers to make arrests supports the conclusion that the decision to make an arrest is discretionary. K.S.A. 22-2401 states that a "law enforcement officer *may* arrest a person under any of the following circumstances . . . ." (Emphasis added.) The language of K.S.A. 22-2401 is permissive, and nothing in the statute suggests that law enforcement officers have a mandatory duty to make arrests in the circumstances present here. Additionally, the decision facing the police officers in this case required them to employ expertise, both educational and experiential, and was far from ministerial.

We thus find the officers' decisions relating to investigating and deciding whether to arrest the bail bondsmen were of the nature and quality which the legislature intended to place beyond judicial review. Permitting KTCA claims involving negligence based on the facts present here would require this court to engage in the type of judicial second-guessing that the legislature intended to avoid.

As recognized in *Robertson*, when the Court found the nature and quality of the officers' decision of whom to evict from the property warranted application of the discretionary function exception:

> "It would be virtually impossible for police departments to establish specific guidelines designed to anticipate every situation an officer might encounter in the course of his work. Absent such guidelines, police officers should be vested with the necessary discretionary authority to act in a manner which they deem appropriate without the threat of potentially large tort judgments against the city, if not against the officers personally." *Robertson*, 231 Kan. at 362.

20

Regardless of whether the police officers exercised prudent judgment or abused their discretion and regardless of the level of discretion involved, their investigation of the events and their resulting decision not to arrest the C-U-Out representatives falls within the discretionary function exception to the KTCA. Therefore, the City is immune from tort liability by operation of K.S.A. 2016 Supp. 75-6104(e).

*Conclusion*

To the extent the police officers took no affirmative acts, they owed no duty to the Plaintiffs on which a negligence case could be built. To the extent the police officers did take affirmative acts, their investigation and resulting decision not to arrest the bail bondsmen fell within the discretionary function exemption to the KTCA. Because the facts and fact-based inferences in the amended petition fail to state a claim on any possible theory, the district court properly granted the City's motion to dismiss.

Affirmed.